EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CHANGE HEALTHCARE TECHNOLOGIES, LLC, a Delaware limited liability company; DEBBIE WALLER, an individual; and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TIN NGUYEN, an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Orange County Superior Court 700 Civic Center Drive Santa Ana, CA 92701 | CASE NUMBER: *(Número del Caso):* 30-2022-01281354-CU-OE-CJC |

Assigned for All Purposes to: **Judge Michael Strickroth**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Andranik Tsarukyan; Remedy Law Group LLP, 610 E. Providencia Ave., Unit B, Burbank, CA 91501; Tel. (818) 422-5941

| | | | |
|---|---|---|---|
| DATE: *(Fecha)* 09/16/2022 | David H. Yamasaki, Clerk of the Court | Clerk, by *(Secretaria)* | , Deputy *(Adjunto)* A. Van Arkel |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* CHANGE HEALTHCARE TECHNOLOGIES, LLC, a Delaware limited liability company
   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☑ other *(specify):* Limited Liability Company
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** |

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Andranik Tsarukyan (SBN 258241)
Armen Zenjiryan (SBN 261073)
Patricia Lynne Mitchell (SBN 216224)
REMEDY LAW GROUP LLP
610 E. Providencia Ave., Unit B
Burbank, CA 91501
Tel: (818) 422-5941
Andy@remedylawgroup.com
Armen@remedylawgroup.com
Patti@remedylawgroup.com

Attorneys for Plaintiff
TIN NGUYEN

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ORANGE

TIN NGUYEN, an individual,

Plaintiff,

v.

CHANGE HEALTHCARE TECHNOLOGIES, LLC, a Delaware limited liability company; DEBBIE WALLER, an individual; and DOES 1 through 100, inclusive,

Defendants.

30-2022-01281354-CU-OE-CJC

Case No.:
Assigned for All Purposes to: Judge Michael Strickroth

**COMPLAINT FOR DAMAGES FOR:**

1. **HARASSMENT BASED ON RACE IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT;**

2. **DISCRIMINATION BASED ON RACE IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT;**

3. **DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT;**

4. **RETALIATION IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT;**

5. **FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT;**

6. **FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT;**

1

PLAINTIFF'S COMPLAINT FOR DAMAGES

|  |  |
|---|---|
| ) | **7. FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT;** |
| ) | **8. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY;** |
| ) | **9. WHISTLEBLOWER RETALIATION IN VIOLATION OF CAL. LABOR CODE § 1102.5** |
| ) | **10. FAILURE TO PAY WAGES UPON TERMINATION (CAL. LABOR CODE § 201 & 203).** |
| ) | **DEMAND FOR A JURY TRIAL** |

1.     PLAINTIFF TIN NGUYEN ("PLAINTIFF" or "MR. NGUYEN"), an individual, hereby submits this Complaint for Damages against DEFENDANTS CHANGE HEALTHCARE TECHNOLOGIES, LLC ("CHANGE"), a Delaware limited liability company; DEBBIE WALLER ("WALLER"), an individual; and DOES 1 through 100, inclusive (collectively, "DEFENDANTS"), and each of them, and alleges as follows:

## JURISDICTION

2.     This Court is the proper Court, and this action is properly filed in Orange County because DEFENDANTS' obligations and liability arise therein, because DEFENDANTS maintain offices and transact business within Orange County, and because the work that is the subject of this action was and is performed by PLAINTIFF in Orange County.

## THE PARTIES

3.     PLAINTIFF is and at all times relevant hereto was a resident of the State of California, County of Orange.

4.     CHANGE is and at all times relevant hereto was a Delaware limited liability company, existing, doing business and employing individuals in the County of Orange, State of California.

5. .     WALLER is and at all times relevant hereto was an individual, whose present residence is unknown to PLAINTIFF at this time.

2

6.      CHANGE was PLAINTIFF'S employer within the meaning of Government Code §§ 12926(d), 12940 (a), (h), (l), (h) (3) (A) and (i), and 12950, and regularly employs five (5) or more persons and is therefore subject to the jurisdiction of this Court.

7.      The true names and capacities, whether individual, corporate, associate, or otherwise of the DEFENDANTS named herein as DOES 1-100, inclusive, are unknown to PLAINTIFF at this time and therefore said DEFENDANTS are sued by such fictitious names.  PLAINTIFF will seek leave to amend this Complaint to insert the true names and capacities of said DEFENDANTS when the same become known to PLAINTIFF.  PLAINTIFF is informed and believes and thereupon alleges that each of the fictitiously named DEFENDANTS is responsible for the wrongful acts alleged herein and is therefore liable to PLAINTIFF as alleged hereinafter.

8.      PLAINTIFF is informed and believes, and based thereupon alleges, that at all times relevant hereto, DEFENDANTS, and each of them, were the agents, employees, managing agents, supervisors, conspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other DEFENDANTS, and each of them, and in doing the things alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employment, alter ego status, and/or joint venture and with the permission and consent of each of the other DEFENDANTS.

9.      PLAINTIFF is informed and believes, and based thereupon alleges, that DEFENDANTS, and each of them, including those DEFENDANTS named DOES 1-100, acted in concert with one another to commit the wrongful acts alleged therein, and aided, abetted, incited, compelled, and/or coerced one another in the wrongful acts alleged herein, and/or attempted to do so.  PLAINTIFF is further informed and believes, and based thereupon alleges, that the DEFENDANTS, and each of them, including those DEFENDANTS named as DOES 1-100, formed and executed a conspiracy or common plan pursuant to which they would commit the unlawful acts alleged herein, with all such acts alleged herein done as part of and pursuant to said conspiracy, intended to and actually causing PLAINTIFF harm.

10.     Whenever and wherever reference is made in this Complaint to any act or failure to act by a DEFENDANT or co-DEFENDANT, such allegations and references shall also be deemed to mean the acts and/or failures to act by each DEFENDANT acting individually, jointly and severally.

## ALTER EGO, AGENCY, AND JOINT EMPLOYER

11.     PLAINTIFF is informed and believes, and based thereon alleges, that there exists such a unity of interest and ownership between CHANGE and DOES 1-100 that the individuality and separateness of DEFENDANTS have ceased to exist.

12.     PLAINTIFF is informed and believes, and based thereon alleges that despite the formation of purported corporate existence, DOES 1-100 are, in reality, one and the same as CHANGE, including, but not limited to because:

a.      CHANGE is completely dominated and controlled by DOES 1-100, who personally violated the laws as set forth in this complaint, and who have hidden and currently hide behind CHANGE to circumvent statutes or accomplish some other wrongful or inequitable purpose.

b.      DOES 1-100 derive actual and significant monetary benefits by and through CHANGE'S unlawful conduct, and by using CHANGE as the funding source for their own personal expenditures.

c.      PLAINTIFF is informed and believes that CHANGE and DOES 1-100, while really one and the same, were segregated to appear as though separate and distinct for purposes of circumventing a statute or accomplishing some other wrongful or inequitable purpose.

d.      PLAINTIFF is informed and believes, and based thereon alleges, that the business affairs of CHANGE and DOES 1-100 are, and at all times relevant were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion. CHANGE is, and at all times relevant hereto was, used by DOES 1-100 as a mere shell and conduit for the conduct of certain of DEFENDANTS' affairs, and is, and was, the alter ego of DOES 1-100. The recognition of the separate existence of CHANGE would not promote justice, in that it would permit DEFENDANTS to insulate themselves from liability to PLAINTIFF for violations of the Government Code, Labor Code, and other statutory violations. The corporate existence of CHANGE and DOES 1-100 should be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to PLAINTIFF herein.

13.     Accordingly, CHANGE constitutes the alter ego of DOES 1-100, and the fiction of their separate corporate existence must be disregarded.

PLAINTIFF'S COMPLAINT FOR DAMAGES

14.    As a result of the aforementioned facts, PLAINTIFF is informed and believes, and based thereon alleges that CHANGE and DOES 1-100 are PLAINTIFF's joint employers by virtue of a joint enterprise, and that PLAINTIFF was an employee of CHANGE and DOES 1-100.  Plaintiff performed services for each and every one of DEFENDANTS, and to the mutual benefit of all DEFENDANTS, and all DEFENDANTS shared control of PLAINTIFF as an employee, either directly or indirectly, in the manner in which DEFENDANTS' business was and is conducted.

## **FACTUAL ALLEGATIONS**

15.    PLAINTIFF was hired by CHANGE on May 10, 2021, as a Revenue Cycle Management Advisor with a yearly salary of $98,325.00.

16.    Prior to starting with CHANGE, PLAINTIFF had over fifteen years' experience in this type of work and had previously worked with several other other major healthcare companies. In his position as Revenue Cycle Management Advisor PLAINTIFF was tasked with learning CHANGE'S software and training CHANGE'S clients.  This position was remote.

17.    PLAINTIFF was informed by his co-workers with over ten years' experience that learning the system well enough to be able to educate clients would take over ten months. PLAINTIFF  was excited to get started.

18.    During his employment PLAINTIFF'S direct manager was Sarah Droogsma ("Sarah"). Rather than teach PLAINTIFF about the system Sarah instead had PLAINTIFF "shadow" with a mentor to see how she worked with clients. Unfortunately, the original mentor assigned to PLAINTIFF was busy with her own clients and had little to no time to help Mr. Nguyen learn Change's system. PLAINTIFF'S original mentor left her employment at CHANGE during her time as PLAINTIFF'S mentor.

19.    At that point, in or around late June of early July 2021, Sarah transferred PLAINTIFF to a new "mentor" DEFENDANT DEBI WALLER ("WALLER").

20.    WALLER was not in any position to mentor PLAINTIFF. As soon as PLAINTIFF was assigned to WALLER, she immediately began harassing him by sending aggressive emails and texts. WALLER'S texts made PLAINTIFF extremely anxious as she would extensively use all caps, which seemed as though she was yelling. Additionally, WALLER would send an email and then follow up within a few minutes to check to see if PLAINTIFF had "seen" it. For example, WALLER would send an email to PLAINTIFF

1   and minutes or seconds later she would text him to "see if he received it," or to see if he had responded.

2   Again, these texts were often all caps, and made PLAINTIFF feel extremely anxious at work.

3   21.    PLAINTIFF explained to WALLER that it took him a minute to get to his emails and that

4   WALLER'S behavior was intense. PLAINTIFF explained that he needed time to read and process an

5   email before getting a text about it.

6   22.    Many of these emails followed by texts came during PLAINTIFF'S lunch hour, yet he was still

7   required to respond immediately.

8   23.    WALLER compounded her actions and began changing tasks assigned to PLAINTIFF by Sarah,

9   his manager. For example, WALLER would tell PLAINTIFF that he should not attend a meeting that he

10  was scheduled to attend. This created even further distress as PLAINTIFF was afraid of being reprimanded

11  by Sarah for not completing her tasks, while at the same time being forced to complete what WALLER

12  was asking for.

13  24.    As WALLER was close friends with Sarah and had the ability to draft performance reviews for

14  PLAINTIFF, PLAINTIFF felt pressured to complete tasks outside his area to please Deb and still try to

15  accomplish the tasks assigned to him by his manager Sarah.

16  25.    During this time PLAINTIFF was not learning the system appropriately or how to accomplish his

17  job per Sarah's expectation, instead it appeared WALLER was intentionally sabotaging his work and his

18  career at Change and going out of her way to make him feel uncomfortable and interfering with his

19  objective to do well and learn Change's software and training practices. PLAINTIFF felt WALLER'S

20  behavior towards him was designed specifically to harass him at work, though he had no idea why.

21  26.    About a week or two after the behavior with WALLER began, PLAINTIFF called and asked her

22  about it. PLAINTIFF explained to WALLER that while she was supposed to be his mentor, he was feeling

23  consistently like he was doing something wrong. PLAINTIFF was confused and asked, "why are you

24  doing this to me?" He explained to WALLER that her requests were so intense that he felt stressed and

25  unable to breathe.

26  27.    What happened next was beyond anything PLAINTIFF had experienced in his life as a Vietnamese

27  native. Rather than apologize, WALLER told Mr. PLAINTIFF that she "does not like Asians" and was

28

PLAINTIFF'S COMPLAINT FOR DAMAGES

1  upset that Sarah had assigned PLAINTIFF to be her mentee. PLAINTIFF was taken aback and had no

2  idea what to say or how to respond.

3  28.     While there were no Asians in his group and few at the company, being openly harassed at work

4  was not something that had ever happened to PLAINTIFF before. On top of being angry and upset

5  PLAINTIFF was shaking and feeling sick to his stomach. PLAINTIFF stated to WALLER, "well you still

6  have to work with me," and then hung up.

7  29.     Shortly after getting off the phone with WALLER, PLAINTIFF called his manager Sarah and

8  explained the entire situation, including the harassing behavior, and the hate statement made by WALLER.

9  Sarah told PLAINTIFF that she would handle the situation. PLAINTIFF had reviewed CHANGE'S

10 communication from Neil de Crescenzo and corporate policy on Speaking Up, Anti-Harassment and a No

11 retaliation policy, PLAINTIFF was confident that Sarah could address the situation. Despite this, Sarah

12 never helped him, nor to his knowledge did she ever speak with WALLER about the behavior.

13 PLAINTIFF  was not assigned a new mentor, and instead continued to "shadow" WALLER and take

14 instructions from her.

15 30.     When Sarah could not fix the problem, PLAINTIFF contacted Jennifer at CHANGE'S Human

16 Resources Department. After having a call with Jennifer and explaining the statements made by

17 WALLER, the harassing behavior and the inaction from Sarah, PLAINTIFF followed up with an email

18 summarizing the events and how he was feeling.

19 31.     After his complaint to Human Resources, PLAINTIFF continued to perform his job. As part of his

20 on boarding PLAINTIFF was required to perform "teach backs." A teach back is a training method where

21 PLAINTIFF was expected to demonstrate his knowledge of the Change system, by doing a demonstration

22 with a client for his mentor and others to observe. PLAINTIFF had only had one teach back while he was

23 with Change. Though Mr. Nguyen felt good about his performance and was congratulated by colleagues

24 for his performance, WALLER made no comment. In fact, when PLAINTIFF asked for feedback,

25 WALLER did not provide any.

26 32.     At or around this same time Sarah also began to attack PLAINTIFF for his complaints to

27 CHANGE. Sarah colluded with another friend and Vice President, Carmen Sessoms ("Carmen"), in an

28 effort to set PLAINTIFF up to fail.  Sarah told PLAINTIFF that he was now required to do additional

PLAINTIFF'S COMPLAINT FOR DAMAGES

1   teach backs, this time with up to five additional people from Carmen's team on the line to critique

2   PLAINTIFF'S performance.

3   33.     Sarah was using Carmen's team to critique PLAINTIFF to further bully him at work. Importantly,

4   Sarah with over 10 years' experience at Change and expert knowledge of the software and others on her

5   team that had already completed successful team backs, there was simply no reason to include a significant

6   number of other resources outside of Sarah's department in these already tense teach back situations.

7   34.     At the time, no one else on PLAINTIFF'S team was expected to do this number of teach backs

8   with over four (4) other resources to be critiqued by others outside their team.

9   35.     PLAINTIFF'S first new teach back was set for a Friday. As such, he sent out an invite for the

10  people (Carmen's team) who were supposedly scheduled to attend this session. These team members

11  accepted the invite and PLAINTIFF prepared extensively to perform the teach back. Despite the

12  acceptances of the invitation, the Thursday before the teach back Sarah told PLAINTIFF to cancel the

13  teach back and reschedule it to the next Monday because she said others could not make it due to PTO.

14  36.     PLAINTIFF, who had already received the invite acceptances for the Friday teach back, knew that

15  this was untrue. Nonetheless PLAINTIFF did as Sarah asked and re-scheduled the teach back for Monday.

16  On Friday Carmen began adding additional people to the teach back from her own team in order to increase

17  the number of people on the call and to ambush and intimidate PLAINTIFF.

18  37.     This was not the normal practice for other new hires. None of PLAINTIFF'S colleagues were

19  exposed to this kind of massive critique. While observing Sarah's retaliatory conduct and intentions, Mr.

20  Nguyen also reached out to his previous mentor Rhonda Simpson to confirm this. In fact, one of the

21  persons scheduled to critique PLAINTIFF'S performance was another new employee that had started only

22  three weeks before PLAINTIFF. This new employee would not know the system and would not be able

23  to provide feedback, rather, Sarah was doing nothing other than trying to intimidate PLAINTIFF.

24  38.     PLAINTIFF explained this to Sarah stating that he felt singled out based on his race and complaints

25  about racial harassment and that it was seriously impacting his mental health. PLAINTIFF questioned

26  why he had to perform more than one teach back and stated that he was throwing up and being sick.

27  PLAINTIFF told Sarah that he did not want to do it anymore and thereafter started cc'ing Human

28  Resources on his correspondence with Sarah.

39.     Though PLAINTIFF never received any negative review on his performance after his first teach back or after, Sarah continued to harass PLAINTIFF regarding minute details. One example of this is that PLAINTIFF had obtained numerous credentials over his career and his signature line on his emails reflected those certifications. PLAINTIFF was proud of his achievements and had always included them on his signature line, but Sarah told him that he was for some reason "deceiving clients." There was no company policy, or any other reason provided to PLAINTIFF as to why he would need to remove his achievements from his email signature.

40.     The stress of working with a racist mentor and a dishonest and colluding manager was overwhelming for PLAINTIFF, who had never in his life had prior issues with anxiety. This anxiety left Mr. Nguyen feeling physically sick and unable to work.

41.     In August of 2021, PLAINTIFF requested and was granted approximately six months of leave to deal with his anxiety and depression caused by the actions of WALLER and Sarah. PLAINTIFF requested and was continuous leave from August 27, 2021 through November 4, 2022. In November, the leave was extended from November 5, 2021 through February 6, 2022.

42.     Prior to returning, PLAINTIFF sent another doctor's note extending his leave until March 6, 2022 and requesting an accommodation that he no longer work under Sarah or work with WALLER. Both PLAINTIFF and his doctor believed that working under his Sarah and with the colleague who made racist remarks would hinder his ability to recover.

43.     PLAINTIFF returned to work on or around March 7, 2022.

44.     In response to PLAINTIFF'S accommodation request, CHANGE sent back a letter stating that they would not terminate PLAINTIFF but also would not accommodate his requests regarding Sarah and WALLER. CHANGE did not engage in any other interactive process to determine if PLAINTIFF, who had twenty years' experience in the industry, could be moved to another role, or any other possible accommodation. In fact, no one from CHANGE'S Human Resources team ever even met with PLAINTIFF to discuss *any* possible accommodation. Instead, Human Resources emailed PLAINTIFF denying his initial requests and ignoring other options PLAINTIFF presented.

45.     CHANGE requested that PLAINTIFF complete a Performance Improvement Plan ("PIP") which included a task that was impossible to complete and drawn up by and supervised by Sarah. Sarah's PIP

was filled with defamatory comments and assaults on Mr. Nguyen's performance to justify his termination and her retaliation. Knowing from previous experience and his doctor's request that he was no longer able to work with Sarah, PLAINTIFF explained to CHANGE that the PIP was unjustified and unnecessary.

46.   PLAINTIFF requested a job transfer or any other option rather than working with his harasser. CHANGE did not respond to this request.

47.   CHANGE discriminated against and retaliated against PLAINTIFF for taking time to recover from his disability and speaking up about racial harassment and discrimination. CHANGE refused to accommodate PLAINTIFF and explained that his only options were to "resign" and take a severance package, or to participate in the PIP with Sarah.

48.   Again, and again PLAINTIFF asked for alternatives, explaining that working with Sarah was impossible for him, and again stating that the PIP was nothing more than retaliation. Despite repeated requests to find any alternative CHANGE did not look to reasonably accommodate PLAINTIFF, but instead terminated his employment on or about April 1, 2022. This termination, without any interactive process, was unnecessary and illegal. CHANGE not only allowed the racial discrimination and harassment to continue, but then retaliated against PLAINTIFF when he complained.

49.   PLAINTIFF was not provided with his final paycheck at the time of his termination.

50.   PLAINTIFF has submitted his claims to California's Department of Fair Employment and Housing and has received a "Right to Sue" letter.

### FIRST CAUSE OF ACTION

### HARASSMENT BASED ON RACE/NATIONAL ORIGIN

### Violation of Cal. Gov. Code §12940 *et seq.*

*(Against All Defendants and DOES 1 through 100)*

51.   Plaintiff repleads, realleges, and incorporates by reference each and every allegation set forth in this Complaint.

52.   At all times relevant to this action, PLAINTIFF was employed by CHANGE and DOES 1-100 ("Defendants").

53.   At all times relevant to this action, DEFENDANTS were an employer who regularly employed five or more persons within the meaning of California Government Code § 12926(d).

54.     At all times relevant to this action, PLAINTIFF was a member of a protected class within the meaning of California Government Code §§ 12940(a), 12926(m), because of PLAINTIFF'S race (Asian) and national origin (Vietnamese).

55.     At all times mentioned in this Complaint, the California Fair Employment and Housing Act, Government Code § 12940 *et seq.* was in full force and effect and was binding on Defendants. These sections require Defendants to refrain from harassing any employee on the basis of Race/National Origin, among other things.

56.     Defendants harassed Plaintiff because of his race/national origin. Specifically, WALLER told PLAINTIFF that she did not like Asians and that she wished he had not been assigned to her as a mentee, which was outside the scope of work for CHANGE.

57.     PLAINTIFF reported this behavior to his direct supervisor, Sarah, and to CHANGE'S Human Resources Department.

58.     The harassment by all Defendants created a hostile, intimidating, and oppressive environment for PLAINTIFF, whereby the conditions of his employment were adversely altered.

59.     As a direct and proximate result, PLAINTIFF has suffered, and continues to suffer, substantial losses in earnings and other benefits, and will for a period time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished.  The exact amount of such expenses and losses is presently unknown, and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it is ascertained.

60.     As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered general damages, as he was psychologically injured.  Such injuries have caused, and continue to cause, PLAINTIFF great mental pain and suffering, in an amount more than this Court's minimal jurisdiction.

61.     As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF, for a period of time in the future, will be required to employ physicians and incur additional medical and incidental expenses. The exact amount of such expenses is presently unknown to PLAINTIFF and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it has been ascertained.

62.     PLAINTIFF is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of DEFENDANTS acted with malice and oppression, as their unlawful acts were

1    carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious

2    disregard for PLAINTIFF'S rights.  They also acted fraudulently, as they willfully concealed the fact that

3    PLAINTIFF'S employment rights were being violated, with the intent to deprive him of employment

4    benefits.  Accordingly, an award of punitive damages is warranted.

5    63.    PLAINTIFF is informed and believes and thereon alleges that the actions of DEFENDANTS'

6    employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent,

7    and authorization of DEFENDANTS and were subsequently authorized and ratified by it as well by the

8    and through its officers, directors, and/or managing agents.

9    64.    Pursuant to Government Code § 12965(b), PLAINTIFF requests a reasonable award of attorneys'

10   fees and costs, including expert fees pursuant to the FEHA.

11                                      **SECOND CAUSE OF ACTION**

12                                  **DISCRIMINATION BASED ON RACE**

13                              **Violation of Cal. Gov. Code §12940 *et seq.***

14                       *(Against Defendants CHANGE and DOES 1 through 100)*

15   65.    PLAINTIFF incorporates by reference all allegations in the foregoing paragraphs of this

16   Complaint as though fully set forth herein.

17   66.    At all times relevant to this action, PLAINTIFF was employed by CHANGE and DOES 1-100

18   ("Defendants").

19   67.    At all times relevant to this action, DEFENDANTS were an employer who regularly employed

20   five or more persons within the meaning of California Government Code § 12926(d).

21   68.    At all times relevant to this action, PLAINTIFF was a member of a protected class within the

22   meaning of California Government Code §§ 12940(a), 12926(m), because of PLAINTIFF'S race (Asian)

23   and national origin (Vietnamese).

24   69.    At all times relevant to this action, DEFENDANTS unlawfully discriminated against PLAINTIFF,

25   as previously alleged, on the basis of, among other things, his race/national origin.

26   70.    Defendants were substantially motivated to terminate PLAINTIFF because of his race/national

27   origin and his complaints about harassment and discrimination based on those factors.

28

PLAINTIFF'S COMPLAINT FOR DAMAGES

71.     As a direct and proximate result, PLAINTIFF has suffered, and continues to suffer, substantial losses in earnings and other benefits, and will for a period time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished.  The exact amount of such expenses and losses is presently unknown, and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it is ascertained.

72.     As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered general damages, as he was psychologically injured.  Such injuries have caused, and continue to cause, PLAINTIFF great mental pain and suffering, in an amount more than this Court's minimal jurisdiction.

73.     As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF, for a period of time in the future, will be required to employ physicians and incur additional medical and incidental expenses. The exact amount of such expenses is presently unknown to PLAINTIFF and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it has been ascertained.

74.     PLAINTIFF is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of DEFENDANTS acted with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for PLAINTIFF's rights.  They also acted fraudulently, as they willfully concealed the fact that PLAINTIFF's employment rights were being violated, with the intent to deprive him of employment benefits.  Accordingly, an award of punitive damages is warranted.

75.     PLAINTIFF is informed and believes and thereon alleges that the actions of DEFENDANTS' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of DEFENDANTS and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

76.     Pursuant to Government Code § 12965(b), PLAINTIFF requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

\\\

\\\

\\\

\\\

### THIRD CAUSE OF ACTION

### DISCRIMINATION BASED ON DISABILITY

### Violation of Cal. Gov. Code §12940 *et seq.*

*(Against Defendants CHANGE and DOES 1 through 100)*

77.     PLAINTIFF incorporates by reference all allegations in the foregoing paragraphs of this Complaint as though fully set forth herein.

78.     At all times relevant to this action, PLAINTIFF was employed by CHANGE and DOES 1-100 ("Defendants").

79.     At all times relevant to this action, DEFENDANTS were an employer who regularly employed five or more persons within the meaning of California Government Code § 12926(d).

80.     At all times relevant to this action, PLAINTIFF was a member of a protected class within the meaning of California Government Code §§ 12940(a), 12926(m), based on his disability and/or perceived disability.

81.     At all times relevant to this action, DEFENDANTS unlawfully discriminated against PLAINTIFF, as previously alleged, on the basis of, among other things, his disability and/or perceived disability.

82.     Defendants were substantially motivated to terminate PLAINTIFF because of his disability and/or perceived disability.

83.     As a direct and proximate result, PLAINTIFF has suffered, and continues to suffer, substantial losses in earnings and other benefits, and will for a period time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished.  The exact amount of such expenses and losses is presently unknown, and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it is ascertained.

84.     As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered general damages, as he was psychologically injured.  Such injuries have caused, and continue to cause, PLAINTIFF great mental pain and suffering, in an amount more than this Court's minimal jurisdiction.

85.     As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF, for a period of time in the future, will be required to employ physicians and incur additional medical and incidental expenses.

1    The exact amount of such expenses is presently unknown to PLAINTIFF and PLAINTIFF will seek leave

2    of Court to amend this Complaint to set forth the exact amount when it has been ascertained.

3    86.    PLAINTIFF is informed and believes, and thereon alleges that the employees, officers, directors,

4    and/or managing agents of DEFENDANTS acted with malice and oppression, as their unlawful acts were

5    carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious

6    disregard for PLAINTIFF'S rights.  They also acted fraudulently, as they willfully concealed the fact that

7    PLAINTIFF'S employment rights were being violated, with the intent to deprive him of employment

8    benefits.  Accordingly, an award of punitive damages is warranted.

9    87.    PLAINTIFF is informed and believes and thereon alleges that the actions of DEFENDANTS'

10   employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent,

11   and authorization of DEFENDANTS and were subsequently authorized and ratified by it as well by the

12   and through its officers, directors, and/or managing agents.

13   88.    Pursuant to Government Code § 12965(b), PLAINTIFF requests a reasonable award of attorneys'

14   fees and costs, including expert fees pursuant to the FEHA.

### FOURTH CAUSE OF ACTION

### RETALIATION UNDER THE FAIR EMPLOYMENT AND HOUSING ACT

#### Violation of Cal. Gov. Code §12940 *et seq.*

*(Against Defendants CHANGE and DOES 1 through 100)*

19   89.    PLAINTIFF incorporates by reference all allegations in the foregoing paragraphs of this

20   Complaint as though fully set forth herein.

21   90.    At all times relevant to this action, PLAINTIFF was employed by CHANGE.

22   91.    At all times relevant to this action, CHANGE was an employer who regularly employed five or

23   more persons within the meaning of California Government Code § 12926(d).

24   92.    At all times relevant to this action, California Government Code § 12900 *et seq*. were in full force

25   and effect and were binding upon CHANGE.  These sections, *inter alia*, required CHANGE to refrain

26   from discriminating and retaliating against any employee on the basis of race and disability, regarding

27   him as disabled.

28

93.     DEFENDANT engaged in conduct that taken as a whole, materially and adversely affected the terms and conditions of PLAINTIFF's employment.

94.     PLAINTIFF's assertion of his rights under California Government Code § 12900 *et seq.* and opposition to unlawful conduct was a substantial motivating reason for CHANGE'S decision to retaliate against and terminate PLAINTIFF.  CHANGE'S conduct was a substantial factor in causing harm to PLAINTIFF as set forth herein.

95.     At all relevant times to this action, CHANGE unlawfully retaliated against PLAINTIFF, in violation of California Government Code § 12940(h), 12940(m)(2).

96.     CHANGE'S retaliatory treatment, including termination of PLAINTIFF's employment, was substantially motivated by PLAINTIFF'S race, disability and/or regarding him as disabled.

97.     As a direct and proximate result, PLAINTIFF has suffered, and continues to suffer, substantial losses in earnings and other benefits, and will for a period time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished.  The exact amount of such expenses and losses is presently unknown, and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it is ascertained.

98.     As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered general damages, as he was psychologically injured.   Such injuries have caused, and continue to cause, PLAINTIFF great mental pain and suffering, in an amount more than this Court's minimal jurisdiction.

99.     As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF, for a period of time in the future, will be required to employ physicians and incur additional medical and incidental expenses. The exact amount of such expenses is presently unknown to PLAINTIFF and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it has been ascertained.

100.    PLAINTIFF is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of DEFENDANTS acted with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for PLAINTIFF's rights.  They also acted fraudulently, as they willfully concealed the fact that PLAINTIFF's employment rights were being violated, with the intent to deprive him of employment benefits.  Accordingly, an award of punitive damages is warranted.

101.    PLAINTIFF is informed and believes and thereon alleges that the actions of DEFENDANTS' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of DEFENDANTS and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

102.    Pursuant to Government Code § 12965(b), PLAINTIFF requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

**FIFTH CAUSE OF ACTION**

**FAILURE TO PREVENT HARASSMENT, DISCRIMINATION AND RETALIATION**

**Violation of Cal. Gov. Code §12940 *et seq.***

*(Against Defendants CHANGE and DOES 1 through 100)*

103.    PLAINTIFF incorporates by reference all allegations in the foregoing paragraphs of this Complaint as though fully set forth herein.

104.    At all times relevant to this action, PLAINTIFF was employed by CHANGE.

105.    At all times relevant to this action, CHANGE was an employer who regularly employed five or more persons within the meaning of California Government Code § 12926(d).

106.    California Government Code §§ 12940(k) requires employers to take all reasonable steps necessary to prevent discrimination and retaliation from occurring.

107.    As set forth in detail above, DEFENDANTS subjected PLAINTIFF to severe and pervasive harassment, retaliation and discrimination, but CHANGE took no action.

108.    DEFENDANTS, and each of them, failed to take all reasonable steps necessary to prevent discrimination and retaliation from occurring.  In addition, DEFENDANTS, and each of them, failed to remedy such discrimination and retaliation when DEFENDANTS realized and were informed that it was occurring. DEFENDANTS, and each of them, further failed to train, supervise, and monitor their employees and agents.

109.    CHANGE'S failure to prevent harassment, discrimination and retaliation created and encouraged an environment where such behavior was condoned, encouraged, tolerated, sanctioned, and/or ratified.

110.    As a direct and proximate result, PLAINTIFF has suffered, and continues to suffer, substantial losses in earnings and other benefits, and will for a period of time in the future be unable to obtain gainful

employment, as his ability to obtain such employment and earning capacity have been diminished. The exact amount of such expenses and losses is presently unknown, and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it is ascertained.

111.    As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered general damages, as he was psychologically injured. Such injuries have caused, and continue to cause, PLAINTIFF great mental pain and suffering, in an amount more than this Court's minimal jurisdiction.

112.    As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF, for a period of time in the future, will be required to employ physicians and incur additional medical and incidental expenses. The exact amount of such expenses is presently unknown to PLAINTIFF and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it has been ascertained.

113.    PLAINTIFF is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of DEFENDANTS acted with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for PLAINTIFF's rights. They also acted fraudulently, as they willfully concealed the fact that PLAINTIFF's employment rights were being violated, with the intent to deprive him of employment benefits. Accordingly, an award of punitive damages is warranted.

114.    PLAINTIFF is informed and believes and thereon alleges that the actions of DEFENDANTS' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of DEFENDANTS and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

115.    Pursuant to Government Code § 12965(b), PLAINTIFF requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

\\\
\\\
\\\
\\\
\\\
\\\

PLAINTIFF'S COMPLAINT FOR DAMAGES

## SIXTH CAUSE OF ACTION

### FAILURE TO PROVIDE REASONABLE ACCOMMODATION

#### Violation of Cal. Gov. Code §12940 *et seq.*

*(Against Defendants CHANGE and DOES 1 through 100)*

116.   PLAINTIFF incorporates by reference all allegations in the foregoing paragraphs of this Complaint as though fully set forth herein.

117.   In Violation of Government Code §§ 12940(m) DEFENDANTS, and each of them, and/or their agents/employees failed to provide reasonable accommodation for PLAINTIFF'S known physical condition.

118.   DEFENDANTS failure to provide "reasonable accommodations" constitutes discrimination under California Government Code § 12940 *et seq.*

119.   As a direct and proximate result, PLAINTIFF has suffered, and continues to suffer, substantial losses in earnings and other benefits, and will for a period of time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished.  The exact amount of such expenses and losses is presently unknown, and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it is ascertained.

120.   As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered general damages, as he was psychologically injured.  Such injuries have caused, and continue to cause, PLAINTIFF great mental pain and suffering, in an amount more than this Court's minimal jurisdiction.

121.   As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF, for a period of time in the future, will be required to employ physicians and incur additional medical and incidental expenses. The exact amount of such expenses is presently unknown to PLAINTIFF and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it has been ascertained.

122.   PLAINTIFF is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of DEFENDANTS acted with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for PLAINTIFF'S rights. They also acted fraudulently, as they willfully concealed the fact that

1 | PLAINTIFF'S employment rights were being violated, with the intent to deprive him of employment

2 | benefits. Accordingly, an award of punitive damages is warranted.

3 | 123.   PLAINTIFF is informed and believes and thereon alleges that the actions of DEFENDANTS'

4 | employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent,

5 | and authorization of DEFENDANTS and were subsequently authorized and ratified by it as well by the

6 | and through its officers, directors, and/or managing agents.

7 | 124.   Pursuant to Government Code § 12965(b), PLAINTIFF requests a reasonable award of attorneys'

8 | fees and costs, including expert fees pursuant to the FEHA.

9 | **SEVENTH CAUSE OF ACTION**

10 | **FAILURE TO ENGAGE IN A GOOD FAITH INTERACTIVE PROCESS**

11 | **Violation of Cal. Gov. Code §12940 *et seq.***

12 | *(Against Defendants CHANGE and DOES 1 through 100)*

13 |
14 | 125.   PLAINTIFF incorporates by reference all allegations in the foregoing paragraphs of this
15 | Complaint as though fully set forth herein.

16 | 126.   At all times relevant to this action, PLAINTIFF was employed by CHANGE and DOES 1-100
17 | ("DEFENDANTS").

18 | 127.   At all times relevant to this action, CHANGE was an employer who regularly employed five or
19 | more persons within the meaning of California Government Code § 12926(d).

20 | 128.   At all times relevant to this action, PLAINTIFF was a member of a protected class within the
21 | meaning of California Government Code §§ 12940(a), 12926(m), because of PLAINTIFF'S race, national
22 | origin, disability and/or being regarded as disabled.

23 | 129.   DEFENDANTS unlawfully failed to engage in a timely, good faith interactive process with
24 | PLAINTIFF to determine effective reasonable accommodations even though it had actual and constructive
25 | knowledge of his disability and/or perceived disability, in violation of California Government Code §
26 | 12940(n).

27 |
28 |

130.    DEFENDANTS' failure to engage in the interactive process with PLAINTIFF was substantially motivated by his disability, perceived disability, and/or request for leave and accommodation, as previously pled herein.

131.    As a direct and proximate result, PLAINTIFF has suffered, and continues to suffer, substantial losses in earnings and other benefits, and will for a period of time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished. The exact amount of such expenses and losses is presently unknown.

132.    As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered general damages, as he was psychologically injured.  Such injuries have caused, and continue to cause, PLAINTIFF great mental pain and suffering, in an amount more than this Court's minimal jurisdiction.

133.    As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF, for a period of time in the future, will be required to employ physicians and incur additional medical and incidental expenses.

134.    PLAINTIFF is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of DEFENDANTS acted with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for PLAINTIFF's rights.  They also acted fraudulently, as they willfully concealed the fact that PLAINTIFF's employment rights were being violated, with the intent to deprive him of employment benefits.  Accordingly, an aware of punitive damages is warranted.

135.    PLAINTIFF is informed and believes and thereon alleges that the actions of DEFENDANTS' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of DEFENDANTS and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

136.    Pursuant to Government Code § 12965(b), PLAINTIFF requests a reasonable award of attorneys' fees and costs, including expert fees pursuant to the FEHA.

\\\

\\\

\\\

\\\

# EIGHTH CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

*(Against Defendants CHANGE and DOES 1 through 100)*

137.   PLAINTIFF incorporates by reference all allegations in the foregoing paragraphs of this Complaint as though fully set forth herein.

138.   At all times relevant to this action, PLAINTIFF was employed by CHANGE and DOES 1-100.

139.   At all times relevant to this action, California Government Code § 12900 *et seq.* was in full force and effect and was binding upon CHANGE.  California Government Code § 12900 *et seq.* prohibits CHANGE from discriminating or retaliating against an employee who protests discrimination, and from failing to take all reasonable steps necessary to prevent discrimination from occurring.

140.   CHANGE'S conduct as previously alleged was in retaliation for PLAINTIFF's assertion of rights under California Government Code § 12900 *et seq.*

141.   PLAINTIFF's assertion of his rights under California Government Code § 12900 *et seq.* was a substantial motiving reason for CHANGE'S decision to terminate PLAINTIFF.  DEFENDANT'S conduct was a substantial factor in causing harm to PLAINTIFF as set forth herein.

142.   California Government Code § 12900 *et seq.* evinces a policy that benefits society at large, was well-established at the time of PLAINTIFF's discharge, and is substantial and fundamental.

143.   CHANGE'S wrongful termination of PLAINTIFF's employment was substantially motivated by his race, national origin, disability and/or perceived disability.

144.   As a direct and proximate result, PLAINTIFF has suffered, and continues to suffer, substantial losses in earnings and other benefits, and will for a period time in the future be unable to obtain gainful employment, as his ability to obtain such employment and earning capacity have been diminished.  The exact amount of such expenses and losses is presently unknown, and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it is ascertained.

145.   As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered general damages, as he was psychologically injured.  Such injuries have caused, and continue to cause, PLAINTIFF great mental pain and suffering, in an amount more than this Court's minimal jurisdiction.

PLAINTIFF'S COMPLAINT FOR DAMAGES

146.    As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF, for a period of time in the future, will be required to employ physicians and incur additional medical and incidental expenses. The exact amount of such expenses is presently unknown to PLAINTIFF and PLAINTIFF will seek leave of Court to amend this Complaint to set forth the exact amount when it has been ascertained.

147.    PLAINTIFF is informed and believes, and thereon alleges that the employees, officers, directors, and/or managing agents of DEFENDANTS acted with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury, involved, and with willful and conscious disregard for PLAINTIFF's rights.  They also acted fraudulently, as they willfully concealed the fact that PLAINTIFF's employment rights were being violated, with the intent to deprive him of employment benefits.  Accordingly, an award of punitive damages is warranted.

148.    PLAINTIFF is informed and believes and thereon alleges that the actions of DEFENDANTS' employees, officers, directors, and/or managing agents were undertaken with the prior approval, consent, and authorization of DEFENDANTS and were subsequently authorized and ratified by it as well by the and through its officers, directors, and/or managing agents.

**NINTH CAUSE OF ACTION**

**WHISTLEBLOWER RETALIATION**

**Violation of Cal. Labor Code § 1102.5**

*(Against Defendants CHANGE and DOES 1 through 100)*

149.    PLAINTIFF incorporates by reference all allegations in the foregoing paragraphs of this Complaint as though fully set forth herein.

150.    PLAINTIFF reported to CHANGE through both his manager, Sarah, and CHANGE'S Human Resources Department that he believed CHANGE'S employee DEFENDANT WALLER violated Plaintiff's right to be free from racial harassment in the workplace under the United States and California Constitutions, as well as a violation of California's Fair Employment and Housing Act.

151.    Defendants retaliated against Plaintiff in violation of the California Labor Code § 1102.5 which states that an employer shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law

enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

152.    As a direct and proximate result of the actions of DEFENDANTS, including the termination of PLAINTIFF'S employment in violation of public policy of the state of California, PLAINTIFF has suffered and will continue to suffer lost wages and other employment benefits, whereby PLAINTIFF is entitled to general compensatory damages in amounts to be proven at trial, in addition to any other remedies and damages allowed by law. DEFENDANTS conduct described herein was outrageous and executed with malice and fraud, and with conscious disregard for PLAINTIFF'S rights and further, with the intent, design and purpose of injuring Plaintiff.

153.    Defendants authorized, condoned and/or ratified the unlawful conduct described herein. As a proximate result of the actions described herein, Plaintiff is entitled to recover nominal, actual, compensatory, punitive and exemplary damages in amounts to be proven at trial, in addition to any other remedies and damages allowable by law.

## TENTH CAUSE OF ACTION

### FAILURE TO PAY WAGES UPON TERMINATION

#### Violation of Cal. Labor Code §§ 201 & 203

*(Against Defendants CHANGE and DOES 1 through 100)*

154.    PLAINTIFF incorporates by reference all allegations in the foregoing paragraphs of this Complaint as though fully set forth herein.

155.    At all times relevant to this action, PLAINTIFF was employed by DEFENDANTS.

156.    California Labor Code Section 203, states in pertinent part: "(a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee

shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days. An employee who secretes or absents themselves to avoid payment to them, or who refuses to receive the payment when fully tendered to them, including any penalty then accrued under this section, is not entitled to any benefit under this section for the time during which the employee so avoids payment."

157.    While Plaintiff was terminated on or about April 1, 2022, he did not receive his final paycheck weeks after his termination. As such Plaintiff is entitled to receive a full day's wages for each day he was forced to wait to receive his final paycheck up to thirty (30) days.

158.    DEFENDANTS failed to properly compensate PLAINTIFF at the time of termination and are therefore subject to waiting time penalties in an amount to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF seeks judgment against DEFENDANTS, and each of them, in an amount according to proof, as follows:

1.  For a money judgment representing compensatory damages including lost wages, earnings, commissions, and other employee benefits, and all other sums of money, together with interest on these amounts; for other general and special damages.

2.  For prejudgment interest on each of the foregoing at the legal rate from the date the obligation became due through the date of judgment on this matter;

3.  For costs of suit, attorneys' fees and costs pursuant to the Labor Code;

4.  For post-judgment interest;

5.  For penalties as required by law;

6.  For waiting time penalties pursuant to Cal. Labor Code § 203;

7.  For punitive damages pursuant to Civil Code §3294 in amounts sufficient to punish DEFENDANTS for the wrongful conduct alleged herein and to deter such conduct in the future;

8.  For costs of suit, attorneys' fees, and expert witness fees pursuant to the FEHA.

PLAINTIFF'S COMPLAINT FOR DAMAGES

9. For any other relief as the Court deems just and proper.

DATED: September 16, 2022          REMEDY LAW GROUP LLP


By:  *Andy Tsarukyan*
     Andranik Tsarukyan
     Armen Zenjiryan
     Patricia Lynne Mitchell

     Attorneys for Plaintiff
     TIN NGUYEN


## DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a jury trial of all causes of action and claims with respect to which he has a right to jury trial.


DATED: September 16, 2022          REMEDY LAW GROUP LLP


By:  *Andy Tsarukyan*
     Andranik Tsarukyan
     Armen Zenjiryan
     Patricia Lynne Mitchell

     Attorneys for Plaintiff
     TIN NGUYEN

PLAINTIFF'S COMPLAINT FOR DAMAGES